Rafaat A. RAHMANI, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–87–00551–CR.

Court of Appeals of Texas, Houston (1st Dist.).

April 14, 1988.

Charles Rice Young, Houston, for appellant.

John B. Holmes, Dist. Atty., of Harris County, Russell Richardson, Asst. City Atty., Houston, for appellee.

Before EVANS, C.J., and SAM BASS and DUNN, JJ.

## OPINION

SAM BASS, Justice.

The municipal court convicted appellant of "operating an adult arcade without a permit" and assessed a fine of $150. (Although this case was prosecuted in municipal court, the record reflects that the State, and not the City of Houston, brought the charges.) On appeal to the county criminal court at law, his conviction was affirmed.

We affirm.

Pursuant to Tex.Gov't Code Ann. section 30.278 (Vernon Pamph.1988), appellant seeks a reversal of the county criminal court decision. The City of Houston and/or the State failed to submit a brief to the county criminal court, and no party requested that a statement of facts be made at trial. Therefore, because section 30.278 limits what is available for appellate review to the briefs and transcript considered by the county criminal court, the record before us is limited.

In his first three points of error, appellant contends that Houston City Code 85–1337 ("the Ordinance") violates the First and Fourteenth Amendments of the United States Constitution. His specific arguments are that the Ordinance is overbroad, "void for vagueness," and that it effects an impermissible "prior restraint" on free

speech. Appellant's points of error constitute "facial challenges" because he claims that the law is "invalid *in toto* —and therefore incapable of any valid application." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494 n. 5, 102 S.Ct. 1186, 1191 n. 5, 71 L.Ed.2d 362 (1982) (quoting *Steffel v. Thompson,* 415 U.S. 452, 474, 94 S.Ct. 1209, 1223, 39 L.Ed. 2d 505 (1974)).

Appellant bases these points of error on specific sections of the Ordinance. Tex.R. Crim.Evid. 204 states that judicial notice may be taken of the ordinances of cities and counties of Texas. All references to the provisions of the Ordinance in this opinion are made pursuant to rule 204. The relevant sections of the Ordinance read:

Sec. 28–81. *Definitions.*

*Adult arcade* shall mean any 'premises' to which members of the public ... are admitted and permitted to use one or more 'arcade devices.'

*Arcade device* shall mean any coin or slug operated or electronically or mechanically controlled machine or device that dispenses or effectuates the dispensing of 'entertainment', that is intended for the viewing of five or fewer persons in exchange for any payment of any consideration.

*Entertainment* shall mean (1) any live exhibition, display or performance, or (2) any still picture(s) or movie picture(s), whether mechanically, electrically or electronically displayed ... in which the 'specified sexual activities' are depicted.

*Premises* shall mean a building....

*Specified sexual activities* shall mean (1) human genitals in a state of sexual stimulation or arousal, (2) acts of human masturbation, sexual intercourse or sodomy, (3) fondling or other erotic touching of human genitals, pubic regions, buttock or female breast, or (4) any combination thereof.

Sec. 28–84. *Penalties.*

(a) The violation of any provision of this article, including the doing of anything which is herein prohibited or declared to be unlawful or the failure to do anything or perform any duty which is

required herein, shall constitute a misdemeanor which shall be punishable, upon conviction, by a fine of not less than one hundred fifty dollars nor more than two hundred dollars.

Sec. 28–91. *Permit required, posting.*

(a) It shall be unlawful for any person to own, operate, manage or conduct any business in an adult arcade unless there is a permit for the adult arcade.

(b) It shall be unlawful for any person to own, operate, manage or conduct any business in an adult arcade unless the permit is posted at the place designated therefor....

Sec. 28–101. *View from manager's station.*

(a) If an adult arcade has one manager's station designated pursuant to section 28–92(c) of this Code, then the interior of the adult arcade shall be configured in such a manner that there is an unobstructed view of every area of the adult arcade to which any patron is permitted access for any purpose from that manager's station. If an adult arcade has two or more manager's stations designated pursuant to section 28–92(c) then the interior of the adult arcade shall be configured in such a manner that there is an unobstructed view of each area of the adult arcade to which any patron is permitted access for any purpose from at least one of the manager's stations. The view required in this subsection must be by direct line of sight from the manager's station.

(b) It shall be the duty of the owners and operator, and it shall also be the duty of any agents and employees present in an adult arcade to ensure that the view area specified in subsection (a) remains unobstructed by any merchandise, display racks or other materials at all times that any patron is present in the adult arcade and to ensure that no patron is permitted access to any area of the adult arcade which has been designated as an area in which patrons will not be permitted in the plan filed pursuant to section 28–92(c) of this Code.

Sec. 28–102. *Lighting*

(a) Each adult arcade shall be equipped with overhead lighting fixtures of sufficient intensity to illuminate every place to which patrons are permitted access at an illumination of not less than one (1.0) foot candle as measured at the floor level.

We note the general rule that, in passing upon the constitutionality of a statute, we begin with a presumption of validity. We presume that the legislature does not act unreasonably or arbitrarily; thus, the burden is on whoever challenges an act to establish its unconstitutionality. *Spring Branch Indep. School Dist. v. Stamos,* 695 S.W.2d 556, 558 (Tex.1985); *Robinson v. Hill,* 507 S.W.2d 521, 524 (Tex.1974).

### A. Whether the Ordinance is Overbroad

We address the overbreadth challenge first because, in a facial challenge based on overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If the law does not reach a substantial amount of constitutionally protected conduct, the overbreadth challenge must fail, and the court should then examine the facial vagueness challenge. *Village of Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. at 494–95, 102 S.Ct. at 1191.

Appellant argues that the Ordinance is impermissibly overbroad in four ways: (1) that sec. 28–101(a) prevents the sale of any literature, regardless of its content, in an adult arcade because the requirement that the arcade be configured to provide an unobstructed view of every area within the arcade cannot be satisfied without substantial economic impairment to both protected and unprotected activities; (2) that the end result of the Ordinance is a prohibition on the operation of a business based upon the content of the various forms of expression exhibited by the business; (3) that the Ordinance criminalizes land ownership; and (4) that the Ordinance purports to penalize any person who "conducts any business" within a building that houses arcade devices.

■ A statute or ordinance, even if clear and precise, is overbroad if in its reach it prohibits constitutionally protected conduct. *Grayned v. City of Rockford,* 408 U.S. 104, 114, 92 S.Ct. 2294, 2302, 33 L.Ed.2d 222 (1972). This broad statement of law, however, is tempered by two corollaries. First, for a facial challenge to succeed, the enactment must reach a *substantial amount* of protected conduct. *Village of Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. at 494, 102 S.Ct. at 1191. Second, even protected speech may be regulated to some degree by the State. *Young v. American Mini Theatres,* 427 U.S. 50, 70–71, 96 S.Ct. 2440, 2452–2453, 49 L.Ed.2d 310 (1976). Finally, we observe that there is a "less vital interest in uninhibited exhibition of material on the borderline between pornography and artistic expression than in free dissemination of ideas of social and political significance." *Id.,* 427 U.S. at 61, 96 S.Ct. at 2448.

Addressing appellant's complaint about the Ordinance's internal configuration requirement, appellant's claim that compliance requires the removal of all display devices, as well as the bulk of his inventory, is exorbitant and without merit. *See Village of Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. at 495–96, 102 S.Ct. at 1191–92 (terming "exorbitant" the claim that the restriction in issue made the sale of all products on premises tainted with illegality and, therefore, impossible). No restriction is imposed upon access to the arcade, nor upon the content of the film. The Ordinance does not require the use of fewer arcade devices, limit the number of persons viewing the films, nor reduce the number of film titles that may be shown. The Ordinance "merely requires conformity to its provisions for a visible interior." *People v. B & I News, Inc.,* 164 Cal.App.3d Supp. 1, 6, 211 Cal.Rptr. 346, 349 (1984) (quoting *DeMott v. Board of Police Comm'rs,* 122 Cal.App.3d 296, 302, 175 Cal.Rptr. 879, 883 (1981)).

■ Although the Ordinance does require some inconvenience in arranging a purveyor's wares—both those protected by the First Amendment and those not—we find that it does not reach a *substantial amount* of protected conduct. *Martinez v.*

*State*, 744 S.W.2d 224, 227–28 (Tex.App.—Houston [14th Dist.] 1987, pet. ref'd, untimely filed); *People v. B & I News*, 164 Cal.App.3d Supp. at 6, 211 Cal.Rptr. at 349 ("the ordinance before us does not prevent customers and others from exercising the right to view motion pictures in arcades....").

As for any slight inconveniences in arranging inventory, incidental burdens on free expression are analyzed as time, place, and manner regulations. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 928, 89 L.Ed.2d 29 (1986). Time, place, and manner restrictions are permissible if they are content-neutral, narrowly tailored to serve a significant government interest, and leave open ample alternative channels for communication. *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984); *Ellwest Stereo Theatres v. Wenner*, 681 F.2d 1243, 1245–46 (9th Cir.1982).

Applying the "time, place, manner" test, we note first that the Ordinance is content-neutral. Although it does specifically apply to adult arcades that dispense a certain type of entertainment ("specified sexual activities"), it is directed at the *secondary effects* of adult arcades (these effects are enumerated in the City Council's findings, as incorporated by the Preamble of the Ordinance). *City of Renton v. Playtime Theatres*, 106 S.Ct. at 929 ("the Renton ordinance is aimed not at the content of the films shown at 'adult motion picture theatres,' but rather at the secondary effects of such theaters ..."). Therefore, the Ordinance does not discriminate *because of* the content of the entertainment purveyed.

Second, as to the requirement that the government's interest be significant, the Preamble to the Ordinance attests to the importance and substantiality of the governmental interest. The Preamble reflects that the City Council conducted a public hearing on the relation between public health, safety, and welfare issues, and adult arcades. The Preamble recites the Council's finding that "the booths in the adult arcades have frequently been used

for sexual encounters including those of a casual nature; and that substantial numbers of arrests for sexually related crimes have been made in adult arcade establishments." The Council further found that "numerous persons treated for sexually transmitted diseases have reported an epidemiology including sexual encounters in adult arcades." These findings bear witness to serious public health and welfare concerns that would motivate any city council to act similarly.

A city may establish its interest in the regulation by compiling a record with evidence that may be "reasonably believed to be relevant to the problem that the city addresses." *City of Renton v. Playtime Theatres*, 106 S.Ct. at 931; *SDJ, Inc. v. City of Houston*, 837 F.2d 1268, 1274 (5th Cir.1988). Given the comprehensive and serious nature of these findings, we conclude that the City was reasonable in its reliance.

Addressing the requirement that the Ordinance be narrowly tailored, we observe that the Ordinance is drafted to limit itself to a specific business environment and to regulate the configuration of that environment, not in terms of what is purveyed, but in terms of the visibility of patrons. An ordinance is sufficiently "well tailored" if it effectively promotes the government's stated interest without infringing significantly upon protected conduct. *SDJ, Inc. v. City of Houston*, at 14. The City drafted an ordinance to control problems it found to be serious. The Ordinance does not encompass much beyond those problems: it does not limit who has access to an adult arcade, nor the content of films dispensed; it places no restrictions upon the number of films shown, nor the hours during which films are shown. We find the Ordinance to be sufficiently well tailored.

Finally, we find that the Ordinance leaves open ample alternative channels for communication. The only actual effect of this Ordinance is that patrons of adult arcades will be required to peruse openly, under specified minimum lighting, the entertainment provided. Thus, ample alter-

native channels are left open because none were ever really closed.

The above analysis demonstrates that the Ordinance encroaches upon protected conduct, if at all, in a constitutionally permissible fashion. *See Ellwest Stereo Theatres, Inc. v. Wenner,* 681 F.2d at 1247–48 (holding that a municipal ordinance requiring that viewing areas of booths in which coin operated devices are located be visible from a continuous main aisle was a reasonable regulation of the manner in which film was to be viewed); and *Wall Distrib., Inc. v. City of Newport News,* 782 F.2d 1165, 1169 (4th Cir.1986) (holding that an ordinance making it a criminal offense to exhibit films in enclosed booths is a valid "time, place, and manner" regulation).

■ However, even if the Ordinance did reach a substantial amount of protected conduct, it would still be constitutional, because it satisfies the four-part test of *United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968); *Dumas v. City of Dallas,* 648 F.Supp. 1061, 1069 (N.D.Tex.1986), *aff'd,* 837 F.2d 1298 (5th Cir.1988).

Under the *O'Brien* test, regulation is justified despite its impact on first amendment interests:

> [1] if it is within the constitutional power of the government; [2] if it furthers an important or substantial governmental interest; [3] if the governmental interest is unrelated to the suppression of free expression; and [4] if the incidental restriction on … first amendment freedoms is no greater than is essential to the furtherance of that interest.

*Dumas v. City of Dallas,* 648 F.Supp. at 1069 (quoting *United States v. O'Brien,* 391 U.S. at 377, 88 S.Ct. at 1679).

Applying the first prong of the *O'Brien* test, we conclude that the police power of a city clearly encompasses the power to enact a regulatory adult arcade ordinance. *City of Renton v. Playtime Theatres,* 106 S.Ct. at 930, 932; *Dumas v. City of Dallas,* 648 F.Supp. at 1069; *City of College Station v. Turtle Rock Corp.,* 680 S.W.2d 802, 805 (Tex.1984).

As for the second prong, the City Council's findings, as enumerated in the Preamble, underscore the seriousness of the governmental interest. *See* our "time, place, and manner" analysis *supra.*

Regarding the third prong, we can discern no evidence linking the government's interest to suppression of free expression. Indeed, the language of the Ordinance evinces great concern for regulating the *display* of literature, which indicates the City's goal to be that free expression remain unimpaired. *See Dumas v. City of Dallas,* 648 F.Supp. at 1069 ("[t]he legislative response to the secondary effects of sexually oriented businesses evinced a clear intent to leave alternative avenues open for expression of that genre, while lessening the effects of such businesses on the surrounding community").

The final prong of the *O'Brien* test requires reference to the challenged section of the Ordinance. *Dumas v. City of Dallas,* 648 F.Supp. at 1069–70. We find that any restriction on first amendment freedoms that might result from the enforcement of any of the Ordinance's sections is no greater than is essential to the furtherance of the governmental interests involved. (*See* the reasons stated in our "time, place, and manner" analysis *supra.*) Supporting our conclusion are cases from various jurisdictions upholding similar restrictions. *See, e.g., Ellwest Stereo Theatres v. Wenner,* 681 F.2d at 1246; *Dumas v. City of Dallas,* 648 F.Supp. at 1076; *Broadway Books, Inc. v. Roberts,* 642 F.Supp. 486, 492 (E.D.Tenn.1986); *Martinez v. State,* 744 S.W.2d at 227–28; and *EWAP, Inc. v. City of Los Angeles,* 97 Cal.App.3d 179, 190, 158 Cal.Rptr. 579, 585–86 (1979).

Addressing appellant's three remaining arguments in support of his overbreadth claim, we note that the State need define a criminal offense only with sufficient definiteness so that ordinary people can understand what conduct is prohibited. *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). Ordinary terms in a statute or ordinance are construed according to their common usage

or understanding. *Sproles v. Binford*, 286 U.S. 374, 393, 52 S.Ct. 581, 586, 76 L.Ed. 1167 (1932); *City of Webster v. SignAd. Inc.*, 682 S.W.2d 644, 647 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.) Although these standards traditionally are employed in a "vagueness analysis," because they are general rules of interpretation, we apply them to determine the objective meaning of the Ordinance. Using these legal standards, we find that appellant's arguments are based on an incorrect reading of the Ordinance, that the Ordinance is precise in its language and limited in its reach. The Ordinance is not overbroad.

■ Regarding appellant's contention that the wording of the Ordinance is so broad that the lighting requirement could reach non-adult theaters, we find that the Ordinance clearly regulates only those forms of expression dispensed in arcade booths. The Ordinance applies to "adult arcades" that "dispense" "entertainment" by "arcade devices." By its explicit terms, then, the Ordinance does not reach forms of expression dispensed in a traditional auditorium and therefore is not overbroad in its lighting requirement. *Martinez v. State*, 744 S.W.2d at 227 (and cases cited therein).

■ Appellant's argument that the Ordinance criminalizes land-ownership is incorrect. The Ordinance clearly states that it prohibits the "owning, operating, managing or conducting of business *in* an adult arcade." (Emphasis added.) The Ordinance defines an "adult arcade" as a "premises," and a "premises" as a "building." Therefore, the Ordinance prohibits only certain activities *within* an adult arcade, and *not* the ownership of the building that houses the adult arcade. *See Martinez v. State*, 744 S.W.2d at 227–28.

■ Finally, appellant's argument that the Ordinance is unconstitutional because it penalizes "any business' conducted within an arcade, fails. The phrase in section 28–91 upon which he bases this claim is "conduct any business." Although this phrase would appear all encompassing, section 28–83 states that "[t]he provisions of this article are supplemental and shall be cumulative with all other laws and ordinances applicable in any manner to an adult arcade or to any owner … thereof."

We observe that art. III, ch. 28, Code of Ordinances of the City, which applies to sexually oriented businesses in general, of which adult arcades are an example, contains a very specific definition of "conduct any business." This definition precludes the broad construction of section 28–91 argued by appellant. *Id.* The rule is that an ordinance should not be deemed facially invalid unless it is not readily subject to a narrowing construction. *Tisdale v. State*, 640 S.W.2d 409, 415 (Tex.App.—San Antonio 1982, pet. ref'd). We find that the Ordinance, when *read in its entirety*, does not penalize the conduct of "any" conceivable business that might take place in an adult arcade and should be so construed.

The county court did not err in overruling appellant's overbreadth challenge.

**B. Whether the Ordinance is Vague**

The traditional standard of unconstitutional vagueness is whether the terms of a statute are so indefinite that "men of common intelligence must necessarily guess at its meaning and differ as to its application." *Hynes v. Mayor and Council of Borough of Oradell*, 425 U.S. 610, 620, 96 S.Ct. 1755, 1760, 48 L.Ed.2d 243 (1976); *see also Texas Antiquities Comm. v. Dallas County Community College Dist.*, 554 S.W.2d 924, 928 (Tex.1977); *Texas Liquor Control Bd. v. The Attic Club, Inc.*, 457 S.W.2d 41, 45 (Tex.1970). In reviewing a business regulation for facial vagueness, the principal inquiry is whether the law affords fair warning of what is proscribed. *Village of Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. at 503, 102 S.Ct. at 1195.

With these standards of review in mind, we turn to the specific provisions of the Ordinance to which appellant objects. Appellant urges that the definitions of "adult arcade," "dispensing entertainment," and "arcade device" are so open-ended and im-

precise that the Ordinance provides virtually no ascertainable legal standard at all.

Appellant also argues that the requirement of section 28–101(a), *viz.*, that from the manager's station there shall be "an unobstructed view of every area of the adult arcade to which any patron is permitted," provides too subjective a standard—that it does not provide fair notice of what words or conduct would come within its prohibition. He argues that too much discretion is left with the Chief of Police to determine what constitutes "an unobstructed view."

■ Appellant's contention that "adult arcade" is so vague in its definition that a person of ordinary intelligence would be unable to decide whether the prohibition of the Ordinance is against owners of buildings or owners of businesses fails because the Ordinance is clear in its meaning and gives fair and adequate warning of what it proscribes. The Ordinance prohibits, upon failure to comply with its requirements, owning, operating, managing, or conducting *business* in an adult arcade. If one reads the permit requirement provision of the Ordinance together with the definition of "adult arcade," it is clear that the phrase "adult arcade" limits the scope of the Ordinance to that part of a building occupied by an adult arcade. In other words, it is unlawful, under the Ordinance, to own, operate, manage, or control an adult arcade—which may encompass an entire building or only a portion thereof. *See Martinez v. State*, 744 S.W.2d at 227–28. We find that the Ordinance is clear in its meaning.

We also are unpersuaded by appellant's argument that the language of the Ordinance confers virtually unlimited discretion on the appointed enforcement officials to determine what constitutes an "adult arcade." The police have virtually no discretion in determining what constitutes an "adult arcade" because, contrary to appellant's contentions, the Ordinance is exacting and precise in its definitions, permit application, and denial provisions. Section 28–92, entitled *"Permit application,"* and sec. 28–93, entitled *"Issuance or denial by police chief,"* require that the Chief of Police *shall* grant a permit, if the conditions precedent are met. This statement of the law does not entrust enforcement "to a policeman's command," as proscribed by the Supreme Court. *See Gregory v. City of Chicago*, 394 U.S. 111, 120, 89 S.Ct. 946, 951, 22 L.Ed.2d 134 (1969) (concurring opinion).

■ Appellant contends that teh Ordinance is unclear in its use of "dispense"; however, when we apply the standard meaning of th word in interpreting the statute, we find that the Ordinance is quite clear in what it provides. A dictionary defines "dispense" as "to deal out in portions" and/or "to prepare and distribute." *Webster's New Collegiate Dictionary* 326 (1981). The prohibition against vagueness does not invalidate every enactment that could have been drafted with greater precision. *Harper v. Lindsay*, 616 F.2d 849, 857 (5th Cir.1980). This portion of the Ordinance is understandable by men of ordinary intelligence. *Martinez v. State*, 744 S.W.2d at 226.

Appellant's third contention with the Ordinance is directed to its definition of "arcade device." The Ordinance defines an "arcade device" as "any coin ... operated ... device ... that dispenses ... entertainment, that is intended for the viewing of five or fewer persons...." Appellant argues that the Ordinance is vague because it does not state whose intent is relevant; because it does not specify the relevant time frame within which viewing by five or fewer persons must occur; and because it is unclear as to whether a film or the device itself is the object of the phrase "intended to be viewed."

We find that the common usage and understanding of the phrase, in the context used, makes clear that the phrase refers to devices whose design reflects a general intent (*i.e.*, of either or both the manufacturer and/or the adult arcade owner) that they be used to dispense films to five persons or less. Furthermore, because of its lack of a time reference, the phrase "viewing by five or fewer persons" implicitly refers to that number of persons *at a given*

*time. Martinez v. State,* 744 S.W.2d at 227. Finally, it is obvious that the Ordinance regulates the manner in which persons view *what the device dispenses,* not with how they view the device itself.

Ordinances of other jurisdictions, which contain similar "five or fewer persons" provisions, have been upheld against this type of constitutional attack. *See, e.g., Wall Distrib., Inc. v. City of Newport News,* 782 F.2d at 1169; *Dumas v. City of Dallas,* 648 F.Supp. at 1061; *Martinez v. State,* 744 S.W.2d at 227; and, *Walnut Properties, Inc. v. Long Beach City Council,* 100 Cal. App.3d 1018, 1024, 1025, 161 Cal.Rptr. 411, 415, 416 (1980). A city need not pass guidelines to clarify every possible ambiguity in order to defeat a facial challenge to an ordinance. *See Martinez v. State,* 744 S.W.2d at 227.

■ Appellant's final vagueness challenge is leveled at the "unobstructed view" requirement, arguing that the phrase, if taken literally, could lead to arbitrary and/or discriminatory enforcement. If arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. *Grayned v. City of Rockford,* 408 U.S. at 108, 92 S.Ct. at 2298. We find that the Ordinance provides this type of explicit standard. The permit application and denial provisions, when coupled with the "unobstructed view standard," are sufficient to prevent arbitrary or discriminatory enforcement by the police. The police are afforded limited and controlled discretion under the Ordinance; the police chief *shall* grant the permit if the relevant requirements are met.

The county court did not err in overruling appellant's vagueness challenge.

### C. Whether the Ordinance Is an Impermissible Prior Restraint on Free Speech

■ Appellant's third point of error raises the issue of whether the Ordinance constitutes an impermissible prior restraint on free speech and, therefore, violates due process of law. Appellant argues that the configuration requirements of the Ordinance constitute the sort of prior restraint condemned by both Federal and Texas courts. *See Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 76, 101 S.Ct. 2176, 2186, 68 L.Ed.2d 671 (1981); *Iranian Muslim Org. v. City of San Antonio,* 615 S.W.2d 202, 205 (Tex.1981).

At the same time, appellant acknowledges that certain restraints, prior or otherwise, are constitutionally permissible. *See Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 553, 95 S.Ct. 1239, 1243, 43 L.Ed.2d 448 (1975); *Ellwest Stereo Theaters, Inc. v. Wenner,* 681 F.2d 1243, 1247 (9th Cir.1982). In assessing the propriety of a law that acts as a prior restraint, courts have held permit systems to be unconstitutional prior restraints on free expression *only* if they give virtually unlimited discretion to an administrative official to grant or deny a permit or if they have standards for granting or denying the permit that are so vague that they authorize virtually standardless censorship. *Schope v. State,* 647 S.W.2d 675, 680 (Tex. App.—Houston [14th Dist.] 1982, pet ref'd); *see Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. at 560–62, 95 S.Ct. at 1247–48. We find that neither circumstance applies in the instant case for the reasons elaborated in our opinion *supra.* Courts have overruled prior restraint challenges to statutes similar to the Ordinance in question here. *Dumas v. City of Dallas,* 648 F.Supp. at 1077–78; *Martinez v. State,* 744 S.W.2d at 228; and *EWAP, Inc. v. City of Los Angeles,* 97 Cal.App.3d at 189–90, 158 Cal.Rptr. at 585.

Because we have found that the permit system has a precise and reasonably ascertainable standard, we hold that the county court did not err in overruling appellant's prior restraint challenge.

We overrule appellant's first three points of error.

### D. Preemption Challenges

In his fourth and fifth points of error, appellant claims that the Ordinance is preempted by Tex.Rev.Civ.Stat.Ann. arts. 2372w, 8814, and 8817 (Vernon Supp.1986).

Because appellant failed to include these points of error in his motion for new trial before the municipal court, however, these points are waived. Tex.Govt.Code Ann. secs. 30.269(c), 30.278 (Vernon Pamph. 1988). *Martinez v. State*, 744 S.W.2d at 228.

We hold that the county court did not err in overruling appellant's preemption challenges.

We overrule appellant's fourth and fifth points of error.

The judgment is affirmed.